**E-FILED**
Tuesday, 26 July, 2005  11:21:16 AM
Clerk, U.S. District Court, ILCD
**FILED**

JUL **2 6** 2005

JOHN M. WATERS, Clerk
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

UNITED STATES OF AMERICA,

Respondent,

$05$-$l$$d$ $l$/

vs.                                          Docket No. 02-00119-001

HERMAN MOLLISON

Petitioner.

### MEMORANDUM IN SUPPORT OF PETITIONER'S
### MOTION TO VACATE, SET ASIDE OR CORRECT CONVICTION
### AND SENTENCE PURSUANT TO 28 U.S.C. § 2255

Now comes the Petitioner, Herman Mollison, pro se, and
respectfully moves this Honorable Court to correct his sentence
pursuant to 28 U.S.C. § 2255 because he is actually innocent of
the crime that he was entrapped into commiting.

### JURISDICTION

Mr. Mollison is seeking collateral relief pursuant to 28
U.S.C. § 2255. Mr. Mollison has an Actual Innocence claim which
elimates the one year time limit in which to file said motion.
this Honorable court has jurisdiction to entertain Petitioner's
claim in that in Bousley v. United States, 523 U.S. 614, 188
1604, 104 L.Ed.2d 828 (1998) it was held that a first time §
2255 Petitioner could potentially proceed a Bailey attack  on
his conviction despite not showing cause and prejudice excusing
his failure to make the challenge on direct review. See 118 S.Ct.

1

at 1611.  The Court declared that the attack "may be reviewed in
this collateral proceeding if [the petitioner] can establish that
[an otherwise forfieited constitutional error in his plea colloguy
has probably resulted in the conviction of one who is actually
innocent." Ibid. (citation and quotation marks ommited). The
Court held that "actual innocence," which "means factual innocence,
not mere legal insufficiency, "could be demonstrated on remand by
the petitioner upon showing that "that he did not 'use' a firearm
as that term is defined in Bailey," Id at---- - ----, 118 S.Ct.
at 1611-12.

2

## STATEMENT OF FACTS

Petitioner was involved in a unfirm relationship with one Linda Stenson, and most of the time she frequently asked him to share the purchase cost in the acquisition of drugs with him so she could make some money. Petitioner refused her requests. As time went past the two stopped seeing the other and went on to be involved in intimate relationship with others. Petitioner and Ms. Stenson still continued to be socialble when they infrequently saw the other.

Ms. Stenson called the petitioner one day and asked if he knew someone who would sell him some drugs for her. He told her he would check it out and call her back. Petitioner called her and told her that he could help her with the request. Ms. Stenson came to his residence and pciked him up in her car and they drove to a gas station where the Petitioner met one of his friends. Petitioner got into the friend's truck and they drove around in back of the gas station and returned to the original spot where Petitioner got in the truck. Petitioner returned to Ms. Stenson's car and gave the drugs to ther that he had purchased for her. They then drove back to his residence where she dropped him off.

A few weeks later, Ms. Stenson called petitioner again requesting that he assist her in the purschase of more drugs, he complied and she came by and picked him up in her automobile. They drove to a location where the Petitioner made a drug purchase

3

for her.. When Petitioner returned to her car she kept that she
needed more "hard" meaning "xcrack". Both times she approached
Petitioner to purchase drugs for her she was wearing a "wire".
for the Feds. Both times she had petitioner buy her drugs she
took the drugs back to the Feds.

Approximately one month went by and during that time Ms.
Stenson was still seeing the petitioner from time to time. She
called him and asked if he get her some more drugs but it had
to be hard. She picked petitioner up and they went to his aunt's
house and waited on her front porch while Petitioner's friend
went to get the drugs for her around the corner from the aunt's
house. Petitioner met the friend around the corner recieved the
drugs and and upon returing, gave the drugs to Ms. Stenson, un-
knowlingly to Petitioner, she was "wired" by the Feds.

As the time past, Petitioner and Ms. Stenson was still
seeing the other; one day while talking, she asked him to take
her out to eat...he consented to do so. Ms. Stenson and her son
picked him up; she dropped her son off enroute to get someting
to "eat" (sic). When she did not drivein the directions of
where Petitioner felt was the eating places, he asked her "he
thought they were going to eat. she replied that she had to
stop by her job to get her pay-check. She called on her cell-
phone and said that she was on her way; unknowlingly to him
she was talking to the Feds to let them know that that she and
Petitioner was on their way. She and the Petitioner parked and
entered a building; as soon as they were inside a Federal
Office approached Petitioner and inform him that he had a

4

warrant for Petitioner's arrest. Petitioner was dumfounded and
was wondering what in the hell was going on. Ms. Stenson didn't
say anything. It was later found out that the reason she had
set Petitioner up by coming to him with the drug deals; was
that she had a boyfriend who was locked up and made a deal with
the Feds by setting Petitioner up to help the boyfriend gain
his freedom.

I.     **PETITIONER IS FACTUALLY INNOCENT OF THE CRIME THAT HE WAS SENTENCE FOR.**

In Kuhlman v. Wilson, 477 U.S. 436, 91 L.Ed.2d 364, 106 S.ct. 2616, 2627 (1986) A four Justice pluralty of the Supreme Court sugguested that the ends of justice will demand consideration of the merits of claims only where there is a "colorable showing" of factual innocence. In this matter before the Court the records reflects that there is a "colorable showing" that the Petitioner is factually innocent of the crime that he was convicted and sentenced for.

Based on the definition that dictates the elements of Entrapment by Government and its agents the petitioner is factually innocent of the crime that he was convicted and sentenced for. Under the probative evidence in this case petitioner has a colorable claim of factual innocence. The evidence in this instant matter does not point towards the petitioner being pre-disposed to commiting a crime when he was approached and induced into its commission by the government's informant (agent). The petitioner is factually innocnet of the crime since the evidence (tapes of the wire worn by the government's agent clearly shows that he was not pre-dis-posed into commiting any crime and the agent overtly induced him into the commission of the crime.

## II.    PETITONER WAS ENTRAPPED INTO COMMITING THE CRIME THAT HE WAS CONVICTED AND SENTENCED FOR.

Entrapment means that that government induced defendant to commit crime which defendant was not predisposed to commit. See United States v. Gonzalez, 19 F.3d 1169, 1170 (7th Cir. 1994). As the Statement of Facts accurately points out in this case the Petitioner was not predisposed when government agent, Ms. Stenson, approoacohed him and induced him to commit the crime of purchasing drugs for her to allegedly sell for herself. At the time she approached him, the petitioner, Petitioner was not involved in the sells of drugs or their usage. Petitioner was working as a manager of a restruant and was not involved in any criminal activity. Also see Jacobson v. United States, 112 S.Ct. 1535 (1992) (Evidence establishes entrapment where as a matter of law when government agent ask person to commit crime.) In this matter the wire that Ms. Stenson wore when she induced the petitioner to purcahse drugs for her will clearly show that she intrapped him to commit the crime. Each time that he bought drugs for her to sell with the money that she supplied to him she was the one who approached him to commit the crime In United States v. Rodriguez, 858 F. 2d 809 (1st Cir. 1980) (There is support for defendant's claim that government induced the commission of the crime and the defendant lacked predisposition.) The proof in this case that he government induced the commission of the crime is the tapes that the government's agent Stenson recorded when she induced petitioner to purchase drugs commit for her. In United Statss v. Thomas, 134 F.3d (9th Cir. 2001) it was held that defendant may present prior conduct to

7

support entrapment defense. The Petitioner's prior conduct in this instant matter was that he was gainfully employed as a manager of a restruant and was invloved in any criminal activity when Ms. Stenson approached him and induced him to commit the crimes for her. In <u>United States v. Hollinsworth</u>, 9 F.3d 593 (7th Cir. 1993) The Barent Court of this district ruled that goverment's burden in defecting the entrapment defense is not satisfied merely by showing that the defendant was willing to be commit the crime; rather, the government must prove that the defendant as (was ready) "to commit the crime," that he was poised and likley to commit the crime. The Petitioner was not ready to commit the crime in that he had refused Ms. Stenson priviously to purchase the drugs for her. Hewwas not "poised" and "likely" to commit the crime in that he was not involved in any criminal activities at all.

In <u>United States v. Skakie</u>, 971 D.2d 317 (9th Cir. 1992) it was held that the defendant was entrapped as a matter of law in htat there was insufficient evidence of pre-disposition offered by the government. In this instant matter, there was insufficient evidence of pre-disposition offered by the government in that no evidence was brough forward, nor there any evidence in the record that reflects that Petitioner was predisposed to commit a crime. The records and evidence clearly shows that petitioner was a model and law-abiding citizen working as a cook and manager at two restruants. Teh records also shows that he was not engaged in anyy criminal activities when Ms. Stenson (the government agent)

8

approached him to purcahse drugs for her. As a matter of law the Petitioner was entrapped, which is a violation of the law that a law-enforcement officer is suppose to enforce. See United States v. Rocklman, 217 f.3d 692 (9th Cir. 2001). Also see United States v. Brooks, 215 F.3d 842 (6th Cir. 2001). In United States v. Gonzalez, 19 F.3d 1169, 1173 (7th Cir. 1994) the court held that five factors are relevant to determining absence of entrapment; (1) assessing character or reputation of defendant, including any prior criminal record; (2) whether suggestion of criminal activity was made by government; (3) whether defendant was engaged in criminal activity for profit; (4) whether defendant expressed reluctance to commit offense which was overcome only by government advancement or persuasion; and (5) nature of inducement or persuasion applied by government.

Entrapment means that the government induced the defendant to commit a crime he was not pre-disposition to commit. United States v. Gongalez, supra at 1170 quoting United States v. Franco, 909 F.2d 1042 (7th Cir. 1990).

As to the first factor in making such a determination--- assessing the character and reputation of the defendant. Defendant was employed as the cook and manager at two restruants, there were no drugs found on him when he was arrested. There were no evidence or rumor that he was dealing drugs. As to the second factor---whether the government suggested the narcotic deal; its on tape that the informant pursued him and finally presuaded him to buy drugs for her. As a ttier of fact, a jury would not have dis-credited petitioner's trstimony that the government via its

9

agent (Ms. Stenson) approached him first, ot it could have found

that the suggestion by the informant was notsufficient to prove

entrapment. Evidence lines up squarely for petitioner on the

third factor---whether he was enganged in criminal activity for

profit. Petitioner was not, since he did not share in the profit

or recieved any money from the government agent from her sales

of the drugs eh bought for her. Petitioner weighs favorably on t

the fourth factor---"reluctance---oveceame only by repeated

government inducement or persuasion," government informant, Ms.

Stenson, approached petitioner several times before he relented

under the pressure of her feminine influence as his ex-paramour

to entrapped and convice him to purchase drugs for her. The fifth

factor---the nature of the inducement or persuasion applied by

the government. Even though in United States v. Evans, 924 F.2d

714, 717 (7ht Cir. 1991) it was held that the government is

entitled to offer a non-extraordinary amount of money to a

potential dealer without entrapping him. In this instant matter,

in terms of monetary value, the government via its agent offered

the Petitioner an extraordinary amount in that Ms. Stenson used

treemdous value that the Petitioner placed on the value of his

prior relationship with Ms. Stenson to induce him to purchase the

drugs for her.

10

## CONCLUSION

WHEREFORE, for the foregoing reasons, Petitioner respectfully moves this Honorable Court to vacate his sentence based on the fact that he is actually innocent of the crime which he was convicted of. Petitioner also request'for an appointment of counsel to pursue this motion given its complexity and the fact that Petitioner is at mercy of "Jailhouse Lawyers" who are not traaned professionals that does not provide him competent legal representation.

Respectfully submitted,

HERMAN MOLLISON
Reg. No. 13099-026
Federal Correctional Institution
Post Office Box 5000
Pekin, IL 61555-5000

11